Jessica L. Blome (CSB # 314898)
GREENFIRE LAW, PC
P.O. Box 8055
Berkeley, CA 94707
(510) 900-9502 ext. 5
jblome@greenfirelaw.com

Lauren M. Rule (OSB # 015174) *admitted pro hac vice*
Hannah A. Clements (OSB # 205324) *admitted pro hac vice*
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave, Suite B
Portland, OR 97202
(503) 914-6388
lrule@advocateswest.org
hclements@advocateswest.org

*Attorneys for Intervenor-Defendants*

Marla S. Fox (WSBA # 45611) *admitted pro hac vice*
PO Box 13086
Portland, OR 97213
(651) 434-7737
mfox@wildearthguardians.org

*Attorney for Intervenor-Defendant WildEarth Guardians*

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SIERRA SNOWMOBILE FOUNDATION, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES FOREST SERVICE, et al., <br><br> Defendants, <br><br> and <br><br> WILDEARTH GUARDIANS, et al., <br><br> Intervenor-Defendants. | Case No.: 2:21-CV-01913-JAM-DB <br><br> **DECLARATION OF CHRIS KRUPP** <br><br> Hearing Date: January 10, 2023 <br> Hearing Time: 1:30 p.m. PT <br> Judge: Honorable John A. Mendez |

I, Chris Krupp, hereby declare as follows:

1. I reside in Seattle, Washington.

2. I am an employee and a member of WildEarth Guardians. I have worked for WildEarth Guardians since September 2016.

3. WildEarth Guardians is a non-profit environmental organization dedicated to the protection and restoration of wildlife, wild places, wild rivers, and the health of the American West. WildEarth Guardians is headquartered in Santa Fe, New Mexico, and maintains offices across the West. WildEarth Guardians has a long record of working in the public interest on matters regarding National Forest management, including but not limited to work specifically related to protecting imperiled wildlife and important wildlife habitat, and reducing the impacts from winter motorized travel on public lands. WildEarth Guardians advocates for full compliance with federal environmental laws. Guardians' aim is to preserve the integrity of the existing legal and policy framework related to motorized travel management, ensure Forest Service decisions protect important places for wildlife, ecological health, and quiet recreation, and limit motorized impacts.

4. WildEarth Guardians has over 187,000 members and supporters. Members and supporters of WildEarth Guardians use the Stanislaus National Forest for recreational, aesthetic, scientific, educational, and other purposes. Many of Guardians' members and supporters have particular interests in Sierra Nevada red fox, Pacific marten, Sierra Nevada yellow-legged frog, and Yosemite toad. Many of Guardians' members, such as Darca Morgan, also have particular interests in the management of winter motorized travel on the Stanislaus as it relates to their own recreation and enjoyment of the forest.

5. I am familiar with the Forest Service's July 2021 Over-Snow Vehicle (OSV) Use Designation Record of Decision ("Decision") that designates wintertime motor vehicle use on the Stanislaus National Forest in northern California.

6. WildEarth Guardians actively participated in the Forest Service's consideration and approval of the travel plan by submitting comments and an objection. WildEarth Guardians submitted comments on October 9, 2018, that urged the Forest Service to improve protections for vulnerable Sierra Nevada red fox, Pacific marten, Sierra Nevada yellow-legged frog, and Yosemite toad and their habitats in the project area from snowmobile impacts. Our comments included

DECLARATION OF CHRIS KRUPP — 1

citations to peer-reviewed scientific articles showing how motorized winter recreation harms winter wildlife and disrupts winter habitat. Our comments asked the Forest Service to designate over-snow vehicle trails and areas to minimize harassment of wildlife, disruption of wildlife habitat, and conflicts with non-motorized uses. Guardians' comments also raised concerns about the forest plan amendment to allow motorized use in "near natural" areas. WildEarth Guardians also submitted an objection to the Forest Service's draft decision on May 13, 2019. In its objection, WildEarth Guardians pushed for the Forest Service to revise its analysis under the National Environmental Policy Act ("NEPA") to fully disclose and consider the very real, very harmful impact of the proposed OSV designations on wildlife and habitat, requested the agency demonstrate how it located the OSV designations to minimize harassment of wildlife and disruption of important wildlife habitat, and urged the agency not to designate "near natural" areas for winter motorized use.

7.   Science has made it clear that snowmobile use harasses winter wildlife and disrupts wildlife habitat. Snowmobiles and the noise they generate can displace wildlife from their normal winter habitat, forcing them to move to areas that may have less food and less shelter during a time already challenging for the species due to their high energy needs to survive the winter. Studies have shown displacement of various mammals occurs due to snowmobile use in their habitat. Snowmobiles also compact snow, allowing predators to access more remote, backcountry habitat. Snowmobile snow compaction may also harm small prey animals that live between the snow layer and the ground in winter.

8.   The Sierra Nevada Distinct Population Segment (DPS) of the Sierra Nevada red fox is listed as endangered under the Endangered Species Act. The Sierra Nevada red fox DPS has an estimated population of 18 to 39 individuals. Snowmobile use harms the Sierra Nevada red fox DPS by limiting the availability of their rodent prey by compacting snow, thereby reducing temperature and available oxygen in the spaces between the ground and the bottom of the snowpack in a way that restricts rodents from access to the areas or lowers the prey's survival. Snowmobile trails of compacted snow also provide coyotes with easier access into areas that would otherwise be difficult to access due to deep snow, allowing the coyotes to prey on rodents that would otherwise be

DECLARATION OF CHRIS KRUPP — 2

available as prey for the Sierra Nevada red fox DPS. Coyotes can also predate on adult and young foxes.

9. The Pacific marten is a Forest Service Region 5 "sensitive species" and a California "species of special concern" that occupies high elevation remote areas on the Stanislaus. Snowmobiles harm marten when the machines enter their winter habitat and compact snow, limiting the availability of rodent prey and providing coyotes access to the martens' deep snow habitat where they can become prey. Snowmobile noise can also harm marten through displacement.

10. The Yosemite toad is a threatened species under the Endangered Species Act. Yosemite toad designated critical habitat exists on the Stanislaus National Forest, within the OSV decision area. Yosemite toads rely on very shallow, ephemeral water in meadow and pool habitats for breeding and are highly sensitive to the slightest change in their habitat. Seemingly inconsequential negative changes to their habitat reduce their reproductive success, significantly affecting the existence of a species whose numbers are already small. The loss and degradation of meadow habitat is therefore a primary threat to the existence of the Yosemite toad. Snowmobile travel over areas that have low snow cover or are bare late in the season damages meadows. Snowmobiles can kill or injure Yosemite toads by impact when the machines travel over low snow or bare areas in meadows while the toads are moving from overwintering habitats to breeding habitats.

11. The Sierra Nevada yellow-legged frog is listed as endangered under the Endangered Species Act. Designated critical habitat for the Sierra Nevada yellow-legged frog exists on the Stanislaus National Forest, within the OSV decision area. The species occupies lakes, ponds, tarns, and streams. Adult frogs emerge immediately following snowmelt and will move over ice to reach breeding sites. Snowmobile use near breeding sites during this time can kill or injure frogs. Additionally, OSVs pose other risks to these aquatic species through noise disturbance that can interfere with predator-prey interactions and cause stress, and chemical pollution from OSVs can runoff from melting snow into riparian habitat.

12. The Forest Service's Decision offers important steps to protect the wildlife and their habitat, such as adopting minimum snow depths for motorized winter travel, prohibiting designation

DECLARATION OF CHRIS KRUPP — 3

for OSV use in areas below 5,000 feet in elevation, and instituting a "closed unless designated open" approach to OSV use to reduce overall use on the forest.

13. WildEarth Guardians and its members have an interest in the protection of wildlife and wildlife habitat from adverse impacts of OSV use on the Stanislaus National Forest. The presence of wildlife including Sierra Nevada red fox, Pacific marten, Sierra Nevada yellow-legged frog, and Yosemite toad on the Stanislaus National Forest greatly enhances WildEarth Guardians' members' experiences. Management actions that result in harassment of this wildlife or disruption of wildlife habitat severely diminishes WildEarth Guardians' members' enjoyment of the Stanislaus National Forest. The OSV designations in key habitat areas for these four species threaten their longevity and reproductive abilities. This reduces the probability of Guardians' members viewing the wildlife and prevents the organization and its members from advocating for their protection. The re-opening of areas on the Stanislaus that the Decision closed to OSV use or placed limitations on OSV use would cause harm to wildlife and disruption of habitat, severely diminishing WildEarth Guardians' members' future enjoyment of the Stanislaus. Any reduction of the number of wildlife or quality of wildlife habitat injures those whose experience relies on their existence.

14. WildEarth Guardians and its members have suffered procedural harm because the Forest Service failed to comply with the procedural and substantive requirements of various federal laws in authorizing the Stanislaus OSV designation decision, including NEPA, the Travel Management Rule, and the National Forest Management Act ("NFMA"). WildEarth Guardians' staff, members, and myself rely on the Forest Service's compliance with laws pertaining to environmental review and travel planning to stay informed and participate in travel planning decisions. By failing to follow the requirements of these statutes, the Forest Service harms my interests and the interests of Guardians' staff and members in the Stanislaus National Forest. If the Forest Service complied with these laws, it might reach a different decision that is more protective of the landscape and wildlife, including populations of Sierra Nevada red fox, Pacific marten, Sierra Nevada yellow-legged frog, and Yosemite toad.

15. WildEarth Guardians and its members have suffered actual, concrete and distinct injury to their interests described above, caused by the Forest Service's failure to comply with its

DECLARATION OF CHRIS KRUPP — 4

mandatory duties under NEPA, the Travel Management Rule, and NFMA by signing the Stanislaus OSV designation decision. For instance, as alleged in our Complaint, the Forest Service failed to:

    a.    take a "hard look" under NEPA at all direct, indirect, and cumulative environmental effects on endangered, threatened, and sensitive species from the OSV designations;

    b.    properly apply the minimization criteria of the Travel Management Rule to minimize harassment and habitat disruption for Sierra Nevada red fox, Pacific marten, Sierra Nevada yellow-legged frog, and Yosemite toad;

    c.    comply with NFMA by unreasonably concluding the Forest Plan Amendment would not have any substantial adverse effects to wildlife or habitat.

16. WildEarth Guardians' and its members' injuries are directly traceable to the Forest Service's failure to comply with NEPA, the Travel Rule, and NFMA when making the Stanislaus OSV designations that fail to ensure the protection of rare wildlife such as the Pacific marten, Sierra Nevada red fox, Sierra Nevada yellow-legged frog, and Yosemite toad. We fear the final OSV decision will harm these species and lead to their demise or at least slow their recovery, impairing the ability of WildEarth Guardians' members to enjoy the species and signs of their presence on the Stanislaus. These violations of law therefore impair WildEarth Guardians' organizational mission.

17. These injuries to our members' interests and our organizational mission are redressable by the court. An order declaring that the Forest Service must remedy the violations of NEPA, the Travel Rule, and/or NFMA that we alleged in our Complaint through a supplemental analysis of the impacts to these four species, while at the same time keeping the new winter travel in place to regulate OSV use on the forest, would alleviate the identified harm to our interests. The Forest Service would have to remedy these violations of law by conducting supplemental analysis and making changes to the OSV designations that ensure additional protections for Sierra Nevada red fox, Pacific marten, Sierra Nevada yellow-legged frog, and Yosemite toad that allow Wild Earth Guardians and our members to restore, observe, and protect their populations.

DECLARATION OF CHRIS KRUPP — 5

1 | Dated: July 29, 2022 | Respectfully submitted,

*Christopher J. Krupp*

Chris Krupp
Wild Places Attorney
WildEarth Guardians

DECLARATION OF CHRIS KRUPP — 6

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn automatically generated a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system, causing the following counsel to be served by electronic means:

Shaun Pettigrew
shaun.pettigrew@usdoj.gov

Reade Wilson
reade.wilson@usdoj.gov

Joshua Halen
jmhalen@hollandhart.com

Murray Feldman
mfeldman@hollandhart.com

Alison Hunter
achunter@hollandhart.com


Dated:  July 29, 2022                          /s/Lauren M. Rule
                                               Lauren M. Rule

DECLARATION OF CHRIS KRUPP — 7